UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| FRANK A. MARION and CLOVIS H. MARION, | |
| Plaintiffs, | 2:09-cv-00178 JWS |
| vs. | ORDER AND OPINION |
| MARICOPA COUNTY ADULT PROBATION DEPARTMENT, a public entity; MARICOPA COUNTY SUPERIOR COURT, a public entity; CITY OF GLENDALE, ARIZONA, a public entity; CITY OF GLENDALE, ARIZONA, POLICE DEPARTMENT, a public entity; MICHAEL GOSS and JANE DOE GOSS, husband and wife; ATHENA DEKORSKI and JOHN DOE DEKORSKI, wife and husband; KURT MARGOSIAN and JANE DOE MARGOSIAN, husband and wife; SEAN STEIL and JANE DOE STEIL, husband and wife; JERRY WALLER and JANE DOE WALLER, husband and wife; REGINALD J. RELF and JANE DOE RELF, husband and wife; STATE OF ARIZONA, a public entity, | [Re: Motion at Docket 35] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 35, defendants State of Arizona, Maricopa County Superior Court ("Superior Court"), Maricopa County Adult Probation Department ("Probation

Department"), Michael and Jane Doe Goss ("state defendants") move for dismissal of portions of plaintiffs Frank A. Marion and Clovis H. Marion's complaint. At docket 39, plaintiffs oppose the motion. Defendants reply at docket 41. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Plaintiffs are elderly, in poor health, and are under 24-hour per day hospice care. Plaintiffs' son, John Marion ("John"), was among the caregivers who attended to plaintiffs' nightly needs. When not providing care to his parents, John resided in his own home, which is also located in Maricopa County. At the time of the alleged incident, discussed below, John was on probation arising out of a Class 3 felony conviction in Superior Court. On January 29, 2008, Michael Goss, Deputy Chief Probation Officer for Maricopa County Adult Probation; Athena Dekorski, Adult Probation Officer for Maricopa County Adult Probation; Jerry Waller, Adult Probation Officer for Maricopa County Adult Probation; Sean Steil, Adult Probation Officer for Maricopa County Adult Probation; Kurt Margosian, Adult Probation Officer for Maricopa County Adult Probation; Reginald Relf, Police Officer, Glendale Police Department; and Sergeant Robert Sterrette, Police Officer, Glendale Police Department ("officers"), allegedly arrived at plaintiffs' residence for the purpose of conducting a search related to John's probationary status.[1] Plaintiffs allege that the officers gained entry without a search warrant, legal cause or permission.[2]

---

[1] Doc. 20 ¶ 18; Doc. 48 ¶ 19.

[2] Doc. 20 ¶ 20.

Following their entry into plaintiffs' residence, the officers allegedly began a random search of the premises, encompassing several rooms, and arbitrarily began to seize items of the plaintiffs' property.[3] Clovis Marion was allegedly awaken from a nap by the disturbance created by the officers' entry, and upon investigation of the commotion, was confronted by one or more of the officers.[4] Clovis purportedly demanded the identities of the officers, as well as an explanation for their presence.[5] Clovis' inquiries were allegedly met with "a stern rebuke" from one of the officers, who informed Clovis that they were searching the home "because John is on probation" and encouraged her to "stay out of the way."[6] Clovis claims that she retreated to her bedroom, and that she was followed by one of the officers, who proceeded to initiate a search of her personal belongings. Frank Marion, who was bedridden during the time of the search, was cognizant of the fact of the search, but was unable to approach or communicate with any of the officers. During the course of the search, the officers purportedly seized numerous items of plaintiffs' personalty, including prescription medications that had been prescribed to Clovis and Frank. These medications were eventually returned at the urging of Robert Marion, plaintiffs' other adult son, on June 12, 2008.

---

[3] *Id.* ¶ 22.

[4] *Id.* ¶¶ 24-25.

[5] *Id.* ¶ 26.

[6] *Id.* ¶¶ 27-28.

### III. STANDARD OF REVIEW

The motion at docket 35 asks the court to dismiss certain of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.[7] In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[8] "Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss."[9] A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[10] "To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "Where a complaint pleads facts that are 'merely

---

[7]*De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

[8]*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

[9]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[10]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[11]*Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12]*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13]

## IV. DISCUSSION

**A. Claims Against State Entities and Officers**

    **1. Claims Brought Pursuant to 42 U.S.C. § 1983**

In their response, plaintiffs concede that their claims brought pursuant to 42 U.S.C. § 1983 against the State of Arizona and all individual defendants in their official capacities should be dismissed. This means that the claims for violation of the Constitution of the United States pled against those defendants in the First, Third, and Fourth Claims for Relief will be dismissed with prejudice. Plaintiffs do not concede that claims brought pursuant to § 1983 against the Superior Court, the Probation Department or the individual defendants sued in their individual capacities should be dismissed.

    **2. Legal Capacity of Superior Court and Probation Department**

Plaintiffs assert constitutional claims pursuant to § 1983 and common law tort claims against the Superior Court and the Probation Department. The state defendants ask that these claims be dismissed on the ground that the Superior Court and the Probation Department lack the capacity to be sued. Arizona Revised Statute Title 12, Article 2, permits an aggrieved plaintiff to assert a cause of action against any public entity or public employee in Arizona. For purposes of this Title, A.R.S. § 12-820(6) defines a "public entity" as including "this state and any political subdivision of this

---

[13] *Id.* (quoting *Twombly*, 550 U.S. at 557).

state."[14] "'State' means this state and any state agency, board, commission, or department."[15] With respect to plaintiffs' claims against the Superior Court, the Arizona Court of Appeals in *Yamamoto v. Santa Cruz County Board of Supervisors* expressly held that the Superior Court does not fall within the definition of a "public entity" and, therefore, cannot be sued.[16] The court concludes that *Yamamoto*, and the cases upon which its holding is based, apply here. The court disagrees with plaintiffs' contention that Yamamoto was wrongly decided or that the Superior Court should be considered a political subdivision of the State. Rather, "[a] court is defined to be a place in which justice is judicially administered. It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law."[17] Therefore, all claims against the Superior Court will be dismissed with prejudice.

With respect to the Probation Department, it is appropriate to begin by observing that Arizona courts have consistently held that because "the powers of any agency are defined by the statutes creating it,"[18] "the statutes creating the entity must provide the agency with the power to sue and be sued."[19] Because neither the Arizona Constitution nor the statute creating the Probation Department expressly authorize suit against the

---

[14]A.R.S. § 12-820(6).

[15]*Id.* § 12-820(7).

[16]*Yamamoto v. Santa Cruz Cty. Bd. Of Sup'rs*, 124 Ariz. 538, 539 (1979).

[17]*Todd v. United States*, 158 U.S. 278, 284 (1895).

[18]*Ayala v. Hill*, 136 Ariz. 88, 90 (Ct. App. 1983); *Cox v. Pima County Law Enforcement Merit Sys. Council*, 27 Ariz. App. 494, 495 (Ct. App.1976).

[19]*Lazarescu v. Arizona State University*, 230 F.R.D. 596, 601 (D. Ariz. 2005) (quoting *Kimball v. Shofstall*, 17 Ariz. App. 11, 13 (Ct. App.1972)).

Probation Department, the Probation Department cannot be sued. Plaintiffs cite *Hamblin v. State of Arizona, Maricopa County Adult Probation Department* "for the proposition that the Maricopa County Adult Probation Department is amenable to suit."[20] In *Hamblin*, the trial court initially dismissed plaintiff's claim against the Probation Department on the ground of absolute judicial immunity. The court of appeals reversed that decision, "holding that the alleged failure to supervise [by the Probation Department] was not covered by immunity from civil liability, citing *Acevedo v. Pima County Adult Probation Department*, 142 Ariz. 319, 322, 690 P.2d 38, 41 (1984)." In *Acevedo*, the supreme court held that while "[t]hose officers, employees, and agents who assist the court in the judicial process are also entitled to absolute immunity," "the activities of a probation officer will often not be connected with the performance of a judicial function, and as a consequence not be entitled to immunity."[21] Because *Acevedo* applies to the probation officers, and not to the Probation Department itself, the court rejects plaintiffs' argument that *Hamblin* may be interpreted as subjecting the Probation Department to suit. Therefore, all claims against the Probation Department will be dismissed with prejudice.

### 3. Sufficiency of Claims against Michael Goss

Although plaintiffs concede that their § 1983 claims against Michael Goss and all of the other individual defendants in their official capacity fail, they continue to assert, in their third claim for relief, one § 1983 claim against Goss in his personal capacity under

---

[20]Doc. 39 at 7 (citing *Hamblin v. State*, 143 P.3d 388 (Ariz. Ct. App. 2006), *review denied, depublished at* 151 P.3d 533 (Ariz. 2007)).

[21]142 Ariz. at 322.

a supervisory liability theory[22] and, in their first and fourth claims for relief, two § 1983 claims against Goss in his personal capacity under individual liability theories.[23] The state defendants have moved to dismiss all § 1983 claims against Goss in his personal capacity for failure to state a sufficient supervisor liability claim (third claim) and failure to state a sufficient claim for individual liability (first and fourth claims) under Rule 8. The court addresses plaintiffs' claims and allegations under Rule 12(b)(6) and the Supreme Court's recent jurisprudence concerning the pleading requirements for Rule 8.

In *Bell Atlantic Corporation v. Twombly*, the Supreme Court retired the "no-set-of-facts" holding from *Conley v. Gibson* when it held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[24] Rather, the Court continued, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[25] The Court concluded that a complaint may only avoid a Rule 12(b)(6) dismissal by pleading "enough facts to state a claim to relief that is plausible on its face."[26] While *Twombly* was initially thought to apply only within the antitrust context, the Court recently extended *Twombly*'s holding

---

[22]Doc. 20 ¶¶ 53-68.

[23]Doc. 20 ¶¶ 41-46 (first claim); ¶¶ 70-76 (fourth claim).

[24]*Twombly*, 550 U.S. at 555.

[25]*Id.*

[26]*Id.* at 570.

to other civil matters in *Ashcroft v. Iqbal*, which involved § 1983 claims against various government officials, holding that, under *Twombly*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] But, *Iqbal* continued, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[28]

### a. First Claim for Relief

The state defendants argue that all of plaintiffs' § 1983 claims against Goss may be dismissed on the ground that "Plaintiffs' averments against Goss are not sufficient to make out a claim for supervisor liability under § 1983," but that proposition only touches on plaintiffs' third claim for relief, discussed *infra*. The court believes that the factual allegations supporting plaintiffs' first claim for relief, which implicate an alleged violation of the Fourth Amendment by the officers who purportedly gained entry to their residence by illegal means, could be sufficient to "nudge[] [their] claims . . . across the line from conceivable to plausible."[29] But without further briefing on the elements of plaintiffs' first claim for relief, and the factual allegations pled in support thereof, the court cannot reach a conclusion regarding the first claim's sufficiency under Rule 8(a)(2).

---

[27] *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

[28] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[29] *Twombly*, 550 U.S. at 570.

### b. Third Claim for Relief

Plaintiffs' third claim for relief appears to rely on allegedly unconstitutional policies, customs, and a failure to train by the Probation Department as a basis for a claim against Goss in his supervisory capacity. As an initial matter, the Probation Department is immune from suit and all claims against it have been dismissed.[30] Therefore, Goss may not be held liable under a theory of supervisor liability.[31] On the other hand, "it is plain that [governmental] liability may be imposed for a single decision by [governmental] policymakers under appropriate circumstances."[32] The question, therefore, is whether Goss is a "policymaker" in possession of "final authority" to establish Probation Department policy.[33] Here, plaintiffs have not pled facts sufficient to determine whether Goss possesses final authority, let alone facts sufficient to conclude that the Probation Department operated under an unconstitutional policy or custom. The court cannot conclude on the existing record whether Goss's alleged failure to train probation officers or unconstitutional policymaking may be imputed to the Probation Department. Therefore, plaintiffs' third claim for relief against Michael Goss as a person possessing final authority to establish Probation Department policy or train probation officers is dismissed.

---

[30] *See supra*.

[31] Even if the Probation Department were not immune from suit, "there is no *respondeat superior* liability under section 1983." *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

[32] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

[33] *Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988).

With respect to the substance of plaintiffs' individual claims against Goss, plaintiffs' complaint contains nothing more than conclusory allegations regarding Goss's authority to train probation officers or establish policies on behalf of the Probation Department. In order to establish a claim for failure to train under § 1983, for example, plaintiffs would have to establish that the inadequacy of officer training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons" with whom an officer comes into contact.[34] In order to establish a failure to train under § 1983, one must demonstrate a 'conscious' or 'deliberate' choice on the part of a [government entity or its agent] in order to prevail on a failure to train claim."[35] Plaintiffs' only allegations pertaining to Goss's state of mind, however, are conclusory and fail to state a claim for failure to train upon which relief may be granted. Similarly, as noted above, plaintiffs have failed to allege facts sufficient to determine whether Goss possessed final authority to establish allegedly unconstitutional policies or customs or training regimens on behalf of the Probation Department. Therefore, the court must conclude for this additional reason that plaintiffs have failed to state a claim in their third claim for relief for failure to train or unconstitutional policies or customs under § 1983.

---

[34] *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

[35] *Price*, 513 F.3d at 973 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

### c. Fourth Claim for Relief

Plaintiffs' fourth claim for relief alleges deliberate indifference to medical needs in violation of the privileges and immunities clause of Article IV, section 2 of the United States Constitution, as well as the equal protection and due process clauses of the Fourteenth Amendment. As it applies to Goss, claim four alleges that he and the other officers "demonstrated deliberate indifference to Plaintiffs' medical needs by, among other things, confiscating the Plaintiffs' prescription medications, [which] . . . caused or contributed to the harms suffered by the Plaintiffs."[36] Although the state defendants claim that these allegations are insufficient under Rule 8, they do not deny in their opposition brief that the officers confiscated plaintiffs' prescription medications. However, because the stated legal basis supporting plaintiffs' fourth claim is unprecedented within this circuit,[37] and because the parties have not briefed the sufficiency of the factual allegations or the elements of plaintiffs' fourth claim for relief, the court cannot reach a conclusion regarding the fourth claim's sufficiency under Rule 8(a)(2).

### V. CONCLUSION

For the reasons stated above, the state defendants' motion at docket 35 is **GRANTED** in part and **DENIED** in part as follows:

---

[36] Doc. 20 ¶ 71.

[37] Typically, claims for deliberate indifference to medical needs are brought by prisoners under the cruel and unusual punishment clause of the Eighth Amendment. *See, e.g.*, *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009). Here, because plaintiffs are not incarcerated, their claim must fall under a different section of the Constitution.

(1) All § 1983 claims against the State of Arizona, the Superior Court, the Probation Department, and all individual defendants in their official capacities are **DISMISSED** with prejudice;

(2) All remaining claims against the Probation Department and the Superior Court are **DISMISSED** with prejudice;

(3) The state defendants' motion to dismiss plaintiffs' first claim for relief against Michael Goss is **GRANTED** as to the third claim for relief, but **DENIED** without prejudice as to the first and fourth claims.

DATED this 26th day of August 2009.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE